# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KELVIN D. MOORER,

    *Plaintiff*,

*v.*                               CASE NO. 12-CV-10311

COMMISSIONER OF           DISTRICT JUDGE GEORGE CARAM STEEH
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Benefits ("DIB"), and Supplemental Security Insurance benefits ("SSI"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 14.)

Plaintiff was 50 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 32, 134.) Plaintiff's employment history includes work as a valet for a few months, a maintenance worker for several years, and a cook for one year. (Tr. at 152.) Plaintiff filed the instant claims on January 14, 2008, alleging that he became unable to work on March 1, 2006. (Tr. at 134, 137.) The claims were denied at the initial administrative stages. (Tr. at 79, 80.) In denying Plaintiff's claims, the Commissioner considered paranoid schizophrenia, other psychotic disorders, and sprains and strains, all types, as possible bases for disability. (*Id.*)

On February 11, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Beth J. Contorer, who considered the application for benefits *de novo*. (Tr. at 14-28, 32-78.) In a decision dated July 2, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 24-25.) Plaintiff requested a review of this decision and the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 25, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On January 24, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the

agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations

3

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen,* 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones,* 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen,* 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party");
*Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

## D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through March 31, 2010, and that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of March 15, 2007. (Tr. at 19.) At step two, the ALJ found that Plaintiff's multilevel cervical and lumbar spine degenerative joint and disc diseases with multilevel herniation and radiculopathy and alcohol

abuse were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 19-21.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 23.) The ALJ also found that on the alleged disability onset date, Plaintiff was a younger individual – i.e., age 18 to 49. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 21-23.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 24-25.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that in 2004 Plaintiff was treated in the emergency room for atypical chest pain that he believed was secondary to anxiety. (Tr. at 201.) Chest x-rays were normal and Plaintiff was discharged to return home. (Tr. at 202, 204.)

Plaintiff has been treated for neck and back pain since he was injured in the fall of 2006 while working and "lifting a bench weighing approximately 100 lb." (Tr. at 234.) On November 28, 2006, Plaintiff was treated at the emergency room for "care and treatment of neck pain" and was advised to return to work after November 30 with restrictions of "no heavy lifting." (Tr. at 206.) Plaintiff was again treated in the emergency room on December 6, 2006, for swelling in his left hand. (Tr. at 215.)

Plaintiff has treated with Fernando Diaz, M.D., since January 2007. (Tr. at 215-80.) On March 6, 2007, at the request of Dr. Diaz, an EMG was performed which revealed "3+ irritability in muscles inervated by the L5-S1 nerve root," which was consistent with "Severe R L5 radiculopathy." (Tr. at 346.) On March 15, 2007, Dr. Diaz indicated that Plaintiff was "off work" and was "[t]o be scheduled for decompressive laminectomy[.]" (Tr. at 221.) As of the date of the

hearing, Plaintiff had not had this surgery. Dr. Diaz noted broad-based disc herniation and canal stenosis at C7-T1 as evidenced in recent MRIs. (Tr. at 221, 251, 252.)

On August 14, 2007, Dr. Diaz opined that Plaintiff "developed the herniated discs at C5-C6, C6-C7 levels, and at the L5-S1 level as a direct result of the work-related injury of 2006." (Tr. at 236.) Dr. Diaz indicated that he recommended surgery but that Plaintiff wanted to "postpone any type of surgical intervention indefinitely." (Tr. at 237.) Dr. Diaz then noted that he would refer Plaintiff to Dr. Grias for rehabilitation management and to Dr. Bruce Silverman for Plaintiff's depression. (Tr. at 236.)

On August 21, 2007, Plaintiff was referred to Sophia Grias, M.D., regarding his neck and low back pain. (Tr. at 225-27.) Dr. Grias assessed cervical and lumbar radiculopathy and recommended that Plaintiff begin physical therapy. (Tr. at 226-7.) Dr. Grias noted that Plaintiff's strength was 5 or 4+/5 in all areas but that he had some decreased sensation on the left upper extremity. (Tr. at 226.)

Plaintiff was examined at the request of Disability Determination Services ("DDS") by Cynthia Shelby-Lane, M.D., on March 19, 2008. (Tr. at 281-89.) Dr. Shelby-Lane diagnosed "chronic back pain at the cervical and lumbar spine" and noted that Plaintiff was "not taking pain medications at the current time" and has not taken them "since 2007." (Tr. at 284.) Dr. Shelby-Lane noted that Plaintiff was "[a]ble to get on and off the table without difficulty," that his "[g]ait and stance" were "normal," that his "[t]andem walk, heel walk and toe walk" were all "done without difficulty," that his "[g]rip strength" was "equal bilaterally" and that his "[g]ross and fine dexterity appear[ed] bilaterally intact." (Tr. at 283.) Plaintiff's range of motion in his cervical and lumbar spines were within normal ranges. (Tr. at 285.)

Plaintiff was also examined at the request of DDS by F. Qadir, M.D., on March 19, 2008. (Tr. at 290-93.) Dr. Qadir diagnosed adjustment disorder with anxiety, alcohol abuse, history of alcohol dependence, and pill abuse; he assessed a GAF score of 50 and gave a "guarded" prognosis. (Tr. at 292.)

A Psychiatric Review Technique was completed by Zahra Yousuf, M.D., on March 28, 2008. (Tr. at 294-307.) Dr. Yousuf found Plaintiff's mental impairments, i.e., adjustment disorder with anxiety and substance abuse addition disorder were "not severe." (Tr. at 294, 299.) Dr. Yousuf concluded that Plaintiff was mildly limited in activities of daily living and in maintaining concentration, persistence or pace and had no limitations in maintaining social functioning. (Tr. at 304.)

In his daily activity report, Plaintiff stated that he has no problems with personal care, does not need reminders, cooks meals on a daily basis, does laundry for around one and one-half hours each week, goes outside two or three times daily, walks, shops in stores three or four times a week, is able to handle finances, and watches television. (Tr. at 167-70.)

Plaintiff testified at the administrative hearing that he no longer has a driver's license because he was convicted of driving while under the influence of alcohol in 2009. (Tr. at 47.) Plaintiff added that when he drove, he was able to drive every day. (Tr. at 51-52.) When he drove, he did not have a handicap permit. (Tr. at 54.) Plaintiff has been treated with prescription medications, i.e., Xanax, Valium, and Vicodin. (*Id.*) When asked whether he has had any formal treatment for anxiety, depression or the like, Plaintiff responded, "No. I've always just let the doctor know how I was feeling, and they prescribed them to me." (Tr. at 55.) Plaintiff stated he had not looked into the possibility of being treated in any mental health clinics. (*Id.*) Plaintiff testified that with the mental health medication, "I feel normal." (Tr. at 56.) Plaintiff further

9

testified that his back and neck pain medication "works very good." (*Id.*) When asked whether he was still drinking alcohol, Plaintiff responded, "Yes." (Tr. at 58.) Plaintiff explained that he drinks four or five times a week, for a total of around 40 ounces of beer per week. (Tr. at 58-59.) On good days, Plaintiff stated that he can "do anything - - sweep up, clean up, mop" and "get some kind of exercise," but that he only has about two or three good days per week. (Tr. at 62-63.) On a bad day, however, he lies down most of the day. (Tr. at 63-64.)

Plaintiff testified that if he were allowed to get up and change positions, he "probably could" sit for six hours in a day. (Tr. at 64.) When asked what the heaviest weight was that he could lift without hurting himself, Plaintiff responded, "30, 35 pounds." (Tr. at 66.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who

> could perform a full range of light work with the additional following limitations - -
> such a person can only occasionally push or pull; can occasionally stoop, kneel,
> crouch, balance, climb, or crawl; can occasionally reach; can occasionally use foot
> pedal - - . . . and when I say 'occasionally reach,' I mean occasionally reach forward
> and never overhead reach.

(Tr. at 73.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the 15,000 simple assembly, packaging, and sorting jobs at the light level available in the region, of which approximately 30,000 are available in the State of Michigan. (Tr. at 73-74.) If the person needed to alternate between sitting and standing, the VE indicated that this restriction would reduce the number of jobs to 4,000 in the region and 8,000 in the state. (Tr. at 74.) The ALJ asked the VE if there were any conflicts with the Dictionary of Occupational Titles ("DOT") and his testimony, and he responded that there were not, but noted that the DOT is silent on the ability to alternate between sitting and standing. (Tr. at 75.)

## F.    Analysis and Conclusions

### 1.     Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 21-23.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ's RFC analysis and hypothetical were not supported by substantial evidence because Plaintiff should have been limited to sedentary work (rather than light work) and if the ALJ had limited Plaintiff to sedentary work, the Medical-Vocational Guidelines would require a finding of disability. (Doc. 10 at 6-13.) Plaintiff also

contends that the ALJ should not have relied on the VE's testimony because the VE did not "provide codes for the Dictionary of Occupational Titles" so the "Court cannot even determine what the jobs entailed, to ascertain whether they do in fact represent light work." (Doc. 10 at 12.)

### a.    DOT Codes

An ALJ and VE are not bound by the DOT "in making disability determinations because the Social Security Regulations do not obligate them to rely on the [DOT's] classifications." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). Furthermore, "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Martin v. Comm'r of Soc. Sec.*, 179 F. App'x 369, 374 (6th Cir. 2006).

Instead, in this circuit, Social Security Ruling 00-4p is satisfied by the ALJ simply asking the VE if her testimony is consistent with the DOT. *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375-76 (6th Cir. 2006). Therefore, I suggest that the ALJ was not under any obligation to inquire further into the accuracy of the VE's testimony beyond asking whether the VE's testimony was consistent with the DOT and receiving the VE's response that it was, especially in light of the fact that Plaintiff's counsel has failed to point to any conflicts in his current brief. *See Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("Nothing in the applicable Social Security regulations requires an administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge").

### b.    RFC Analysis

I suggest that substantial evidence supports the ALJ's findings. Plaintiff suffered a work-related accident that has caused neck and back pain (Tr. at 234) and has resulted in disc herniation

and "[s]evere R L5 radiculopathy." (Tr. at 251-522, 346.) Nonetheless, although surgery was recommended, Plaintiff has postponed surgery and has not even taken any pain medications since 2007. (Tr. at 284.) Nor has Plaintiff participated in physical therapy or other alternative treatments. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

In addition, Plaintiff's strength has remained at 4+ or 5/5 (Tr. at 226.) Dr. Shelby-Lane noted that Plaintiff was "[a]ble to get on and off the table without difficulty[,]" that his "[g]ait and stance are normal[,]" that his "[t]andem walk, heel walk and toe walk are done without difficulty[,]" that his "[g]rip strength is equal bilaterally" and that his "[g]ross and fine dexterity appear bilaterally intact." (Tr. at 283.)

Furthermore, Plaintiff's mental impairments were considered "non severe" and caused only mild restrictions in activities of daily living and in maintaining concentration, persistence or pace, and had no limitations in maintaining social functioning. (Tr. at 294, 299, 304.) Finally, Plaintiff testified that he was never formally treated for anxiety, depression, or the like, but that he "always just let the doctor know how I was feeling, and they prescribed them to me." (Tr. at 55.) Plaintiff stated that with mental health medication he "feel[s] normal" and that, when taken, his back and neck pain medication "works very good." (Tr. at 56.) Plaintiff testified that if he were allowed to get up and change positions, he "probably could" sit for six hours in a day. (Tr. at 64.) When asked the heaviest weight he could lift without hurting himself, Plaintiff responded, "30, 35 pounds." (Tr. at 66.) I therefore suggest that substantial evidence supports the ALJ's findings as to residual functional capacity.

I further suggest that the hypothetical posed to the VE properly incorporated the limitations found in the objective medical evidence and was in harmony Plaintiff's own statements that he has no problems with personal care, does not need reminders, cooks meals on a daily basis, does laundry for around one and one-half hours a week, goes outside two or three times daily, walks, shops in stores three or four times a week, is able to handle finances, and watches television. (Tr. at 167-70.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.    Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER

Dated: January 22, 2013        United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: January 22, 2013        By    s/Patricia T. Morris
                                       Law Clerk to Magistrate Judge Binder