UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELVIN MOORER,

        Plaintiff,

                                Case No. 12-cv-10311
vs.                           HON. GEORGE CARAM STEEH

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

<u>ORDER ACCEPTING REPORT AND RECOMMENDATION (DOC. # 16),
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. # 10),
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT(DOC. # 14)
AND DISMISSING ACTION</u>

INTRODUCTION

      Before the court is Magistrate Judge Charles Binder's report and recommendation concerning the parties' cross-motions for summary judgment. Finding that substantial evidence supported the Administrative Law Judge's determination, the magistrate judge recommended that this court deny plaintiff's motion for summary judgment and grant defendant's motion for summary judgment. The magistrate judge specifically stated that any objections to his report must be filed within 14 days of service, and that failure to file such objections constituted a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985).

      Plaintiff has filed a brief statement of objections to that report. Because the court is convinced that substantial evidence supported the ALJ's decision, the magistrate

-1-

judge's report and recommendation will be adopted and the plaintiff's objections will be overruled as set forth below.

## DISCUSSION

Plaintiff Kelvin Moorer applied for both Social Security Disability benefits and Supplemental Security income in January 2008. In those applications, plaintiff alleged a disability/onset date of March 15, 2007. After the claims were denied by the agency, plaintiff requested a hearing before an administrative law judge (ALJ). That hearing was held February 11, 2010. The ALJ issued her decision finding that plaintiff was not disabled under the Social Security Act and denying both applications for benefits. Plaintiff's appeal of that decision was also unsuccessful, following which he filed this action.

The court will not reiterate all of the factual background in its decision, but will address the background pertinent to plaintiff's objections to the magistrate judge's report and recommendation.

Plaintiff's objections all relate to the magistrate judge's determination that substantial evidence supported the ALJ's finding that he could perform "bench work" that "would involve simple assembly, packaging, and sorting." (A.R. at 73-74.) Plaintiff contends that the vocational expert at the hearing gave no information about what "bench work" entailed, provided no Dictionary of Occupational Titles ("DOT") codes, and failed to give any job titles. Plaintiff argues that as a ninth-grade drop out who was unrepresented at the ALJ hearing, he did not possess the sophistication required to request detailed information on what constitutes such "bench work." Plaintiff asserts that under those circumstances, the ALJ was required "'to exercise a heightened level

-2-

of care and assume a more active role' in the proceedings," quoting Lashley v. Sec'y of Health and Human Servs., 708 F.2d 1048 (6th Cir. 1983) (internal citation omitted). Finally, plaintiff reminds the court that once the ALJ determined that the plaintiff-claimant could not perform past relevant work, it was the *defendant's* burden to prove that work other than past work could be performed by the claimant, existing in significant numbers in the economy. See Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Plaintiff claims this did not occur here.

An examination of the hearing transcript shows that the ALJ confirmed that the testifying vocational expert was familiar with the agency's definitions of "unskilled, semiskilled, skilled, sedentary, light, medium, heavy, and very heavy work." (A.R. at 68.) The ALJ also confirmed on two occasions that the vocational expert knew he was required to advise [the ALJ] of any conflict between his opinion and the information in the Dictionary of Occupational Titles (DOT). The ALJ and the vocational expert then reviewed–with plaintiff's participation-- the plaintiff's work background. Finding that the plaintiff had been engaged in building maintenance ("medium to heavy exertionally, some of it unskilled, some of it skilled"), the vocational expert opined that plaintiff could not engage in any of his past relevant work.

The ALJ next inquired of the vocational expert what work a person could perform if the person "could perform the full range of light work with the additional following limitations–such a person can only occasionally push or pull; can occasionally stoop, kneel, crouch, balance, climb, or crawl; can occasionally reach; can occasionally use

foot pedals–let me see something–and when I say 'occasionally reach,' I mean occasionally reach forward and never overhead reach." (A.R. at 73.) The vocational expert stated that the description would "appear to allow someone to do bench work...[involving] simple assembly, packaging, and sorting." (A.R. at 73-74.) He then estimated that at the light level, there would be 15,000 such jobs in the region, and double that number in the state. If the person was required to alternate between sitting and standing, or was limited to sedentary work, the vocational expert opined that the number would be reduced to 4,000 in the region and 8,000 in the state.[1]

      While plaintiff asserts that the vocational expert's lack of specificity was fatal to the defendant's case, the court finds that any shortcomings in the vocational expert's testimony did not alter the fact that substantial evidence existed for the decision. The ALJ was thorough in determining a residual functional capacity for the plaintiff, and applied that capacity in her discussion with the vocational expert about what kinds of jobs plaintiff could perform. The vocational expert then described types of jobs plaintiff could perform, and testified that such jobs existed in significant numbers in the regional and state-wide economy. This satisfied the defendant's burden in this regard, despite any failure of the vocational expert to tie his job descriptions to the DOT. Neither the ALJ nor the vocational expert was bound by the DOT in making a disability determination. <u>Conn v. Sec'y of Health & Human Servs.</u>, 51 F.3d 607, 610 (6th Cir.

---

[1]The vocational expert further testified that there were no inconsistencies between his testimony and the DOT, but that he had testified about jobs with a sit-stand option, and such description was not contained in the DOT. He further stated that "[m]y testimony in that regard, your honor, is based on my experience in the labor market, contacting employers, placing workers requiring a need for a sit/stand option." (A.R. at 75.)

1995). Furthermore, the transcript of the hearing confirms that the ALJ did perform a careful review, engaging in conversation with the plaintiff about his treatment, medications, life activities, and capabilities, and asking for any further information after the close of the vocational expert's testimony.[2] The court finds that the ALJ's standard of care was sufficient for this *pro se* plaintiff at the hearing level. The court will overrule plaintiff's objections to the report. Accordingly,

**IT IS ORDERED** that the magistrate judge's report and recommendation is accepted as the findings and conclusions of this court.

---

[2]In fact, the court notes that at that juncture, the following exchange occurred:

ALJ: But anything else you want to tell me about your back or neck problems or your anxiety, your depression?

CLMT: Well, I do feel–I mean, I would like to get out and go to work. I do feel that therapy and, you know, seeing a doctor regularly may help me–would–I think it'd help me a lot. And–

ALJ: Have you looked for work?

CLMT: I have tried. It's– I have tried going to a lot of places. I tried to help a guy on–he was–he opened a shop on my street. I tried to help him sell mattresses.

ALJ: What happened?

CLMT: He–well, he went out of business, but when I was trying, he was, like, you got–you got to pick that mattress up, put it over there. I was, like–[chuckles]–it ain't going to happen.

ALJ: Did those weigh more than 20 pounds?

CLMT: Yes.

(A.R. at 76-77.)

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED** for the well-developed reasons contained in the magistrate judge's report and recommendation.

**IT IS SO ORDERED**.

Dated:  March 7, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 7, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---